<2>

David P. Gardner, ISB No. 5350
**Hawley Troxell Ennis & Hawley, LLP**
412 West Center
Pocatello, Idaho 83204
Telephone (208) 233-2001
Facsimile (208)232-0150
dgardner@hawleytroxell.com

CHRISTOPHER S. HILL (Utah Bar No. 9931)
(*Pro Hac Vice Admission pending*)
*chill@kmclaw.com*
JAMES T. BURTON (Utah Bar No. 11875)
(*Pro Hac Vice Admission pending*)
*jburton@kmclaw.com*
**KIRTON | MCCONKIE**
Key Bank Tower
36 South State Street, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

*Counsel for Deseret Digital Media, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DESERET DIGITAL MEDIA, INC., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW D. GIUSTI, an individual; and DOES 1–10,<br><br>Defendants. | **COMPLAINT**<br><br>Case No.: _____<br><br>Judge: _____<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Deseret Digital Media, Inc. ("DDM"), by and through its undersigned counsel of record, hereby complain against Defendants Matthew D. Giusti and DOES 1–10 (collectively,

"Defendants") as follows:

## PARTIES

1. DDM is a Utah corporation with its principal place of business at 55 N 300 W Ste. 500 Salt Lake City, Utah 84101-3502.

2. Matthew D Giusti is an Idaho resident who lives at 10099 W Sagramore Ave, Boise, Idaho 83704-5379.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has supplemental or pendant subject matter jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367(a) because those claims arise from the common nucleus of operative facts alleged in Plaintiff's federal claims.

5. This Court has personal jurisdiction over all Defendants under the principles of specific and general jurisdiction as all Defendants reside in Idaho and the facts giving rise to this action occurred in Idaho.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(b) as all Defendants are subject to personal jurisdiction in Idaho and the Defendants' acts that gave rise to this action were committed within the District of Idaho.

## FACTUAL BACKGROUND

### *DDM is a leading provider of digital media and online classifieds services*

7. DDM is a wholly-owned subsidiary company of Deseret Management Corporation.

8. DDM is a leading digital media and online services company.

9. DDM produces digital content the public feels comfortable bringing into their homes and lives on a daily basis. From the stories on its media sites to the products in its marketplaces, DDM strives to create resources that inspire and inform.

10. DDM was formed in 2009 and runs the website operations of KSL.com, the KSL Marketplace, DeseretNews.com, FamilyShare.com, Solutions.DeseretDigital.com, Utah.com, OK.com, and CougarFan.com.

11. The KSL Marketplace provides premier online classifieds services for Utah, Idaho and Wyoming.

12. The KSL Marketplace is divided into KSL.com/classifieds, KSL.com/auto, KSL.com/jobs, local.KSL.com, KSL.com/homes, and deals.KSL.com.

13. KSL Classifieds allows private individuals and companies to buy and sell products and services. KSL Cars allows private individuals and companies to advertise vehicles, which are offered for sale. KSL Jobs allows companies to advertise job openings within their organization. KSL Homes allows private individuals and companies with a forum to advertise houses that are listed for sale or rent. KSL Local allows private individuals to find local services, events, and restaurants. KSL Deals allows private individuals and companies to advertise special deals that are only available for a limited-time.

14. KSL Classifieds is further divided into discrete categories identifying the product or service that is being offered for sale. Specifically, KSL Classifieds allows users to advertise within the broad categories of "Announcements," "Appliances, Auto Part and Accessories," "Baby," "Books and Media," "Clothing and Apparel," "Computers," "Electronics," "For Trade or Barter," "Free," "Furniture," "General," "Home and Garden," "Hunting and Fishing,"

"Industrial," "Other Real Estate," "Outdoors and Sporting," "Pets and Livestock," "Recreation Vehicles," "Tickets," "Toys," and "Services."

15. The KSL Marketplace is highly trafficked by the general public and is currently ranked as the 657th most popular website in the United States by Alexa.com.[1]

***DDM has worked to establish and protect the KSL Marketplace's valuable reputation***

16. DDM has invested significant amounts of time and money in developing and maintaining the KSL Marketplace website and the back end computer systems.

17. DDM has developed a substantial amount of goodwill in the KSL name and mark, and the KSL Marketplace's success and valuable reputation is due in no small part to its position at the forefront of the online classifieds services industry.

18. Moreover, DDM has devoted significant resources in establishing and protecting its intellectual property rights in the KSL Marketplace and the KSL name and mark.

19. DDM has applied for federal trademark protection for numerous variations of the KSL mark for a variety of goods and services. The following applications are currently pending before the United States Patent and Trademark Office: Trademark Serial Nos. 87570030, 87570027, 87570021, 87570016, 87570011, 87570010, 87570006, 87569847, 87569996, 87569992, 87569989, 87569868, 87569864, 87569861, 87569854, and 87568560. Moreover, DDM and its sister company, Bonneville International Corporation are the owners of Federal Trademark Registration Nos. 4861968 and 1362463, respectively.

---

[1] *KSL.com Traffic Statistics*, ALEXA.COM, https://www.alexa.com/siteinfo/ksl.com (last visited Oct. 6, 2017).

20. Once DDM's trademarks are formally granted by the U.S. Patent and Trademark Office, DDM intends to seek leave to amend its complaint to add claims for federal trademark infringement.

***Defendants are misappropriating the reputation and credibility of the KSL Marketplace***

21. On November 13, 2016, Defendant Matthew D. Giusti created a Facebook group titled "KSL CAR CLASSIFIEDS (IDAHO ONLY)."

22. Facebook groups can be created on Facebook.com and are a virtual space for group communication and for individuals to share their common interests and express their opinions. Facebook groups allow individuals to coalesce around a common cause, issue or activity to organize, express objectives, discuss issues, post photos and share related content.[2]

23. The KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group is designed to appear as though it is associated with and/or sponsored by the KSL Marketplace and operated by DDM.



**FIG. 1 – Screenshot of KSL CAR CLASSIFIEDS (IDAHO ONLY) from Oct. 5, 2017**

---

[2] *Facebook Tips: What's the Difference between a Facebook Page and Group?*, FACEBOOK.COM, https://www.facebook.com/notes/facebook/facebook-tips-whats-the-difference-between-a-facebook-page-and-group/324706977130/ (last visited Sept. 20, 2017).

5

24. Specifically, the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group improperly exploits DDM's standard character KSL mark and the stylized KSL mark to identify itself.



| Screenshot from KSL CAR CLASSIFIEDS (IDAHO ONLY) | DDM's KSL mark |

25. Additionally, the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group provides many services that overlap with those provided by the KSL Marketplace. Specifically, the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group explains it was created to allow users to "Buy & Sell (Cars, Trucks, Motorcycles, Trailers, RV's, Boats, ATV's, & Parts)."



FIG. 2 – Screenshot of KSL CAR CLASSIFIEDS (IDAHO ONLY) from Oct. 5, 2017

6

26. Defendant Matthew D. Giusti is currently the sole Administrator of the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group.



**FIG. 3 – Screenshot of KSL CAR CLASSIFIEDS (IDAHO ONLY) from Oct. 5, 2017**

27. As the Administrator of the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group, Defendant Matthew D. Giusti can edit the group's name, cover image, privacy setting, group description and other settings. Accordingly, as the Administrator he is responsible for the Facebook group's improper exploitation of the KSL name and mark.

28. DOES 1–10 may have previously been listed as an Administrator, or may have assisted in the creation or operation of the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group.

***The KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group competes with the KSL Marketplace for customers and has caused, and will continue to cause, irreparable harm to the KSL Marketplace***

29. As of October 5, 2017, the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group has attracted 463 Members. Undoubtedly, many of these Members decided to join the

82002.0002.10044420.1

KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group under the mistaken belief that this group is associated with or sponsored by DDM and the KSL Marketplace.

30. Members of the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group frequently post advertisements that are similar to those found on the KSL Marketplace.

31. Specifically, Members of the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group use the forum to advertise their vehicles. These advertisements include the seller's name and contact information, a description of the vehicle being sold, location, price, and are linked to the Member's Facebook profile.



FIG. 4 – Screenshot of KSL CAR CLASSIFIEDS (IDAHO ONLY) from Oct. 5, 2017

32. The overlap is particularly damaging because users of the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group may elect to only post their advertisements to

8

the Facebook page and not post them to the actual KSL Marketplace.

33. DDM and the KSL Marketplace depend upon the high volume of web traffic and the resulting advertising revenues to maintain and improve the KSL Marketplace. Accordingly, any significant drop in web traffic has the potential to cause irreparable harm to DDM's business and it relationship with its customers.

34. As a result of Defendants' improper actions, some of DDM's customers are refusing to advertise with KSL as they can directly post to Defendants' Facebook page at a lower cost. This has resulted in loss of revenue and other harm to DDM.

## FIRST CLAIM FOR RELIEF
### False Advertising Under 15 U.S.C. § 1125(a)(1)(B)

35. DDM realleges and incorporates by reference all of the foregoing paragraphs.

36. As set forth above, Defendants present their online classifieds services in commerce in conjunction with the KSL name and mark.

37. Such use, and any use similar to it, by Defendants is materially false, misleading, confusing, and/or deceptive to the consuming public.

38. Indeed, such use by Defendants is specifically targeted at appropriating the goodwill associated with the KSL name and mark and the advertising services of the KSL Marketplace.

39. Moreover, such use by Defendants is specifically targeted at creating confusion among consumers as to the origin, sponsorship, association, and/or connection between Defendants' classifieds services and the classifieds services offered by DDM's KSL Marketplace.

40. Defendants' false advertising has caused injury to DDM in an amount to be

9

proven at trial.

41. The false advertising by Defendants is willful and intentional, thereby justifying an award of exemplary and/or punitive damages.

## SECOND CLAIM FOR RELIEF
### False Association Under 15 U.S.C. § 1125(a)(1)(A)

42. DDM realleges and incorporates by reference all of the foregoing paragraphs.

43. Defendants' improper use of DDM's KSL mark is likely to cause confusion or mistake as to an affiliation, connection, or association of Defendants with DDM or the KSL Marketplace.

44. Defendants' improper use of the KSL name and mark is likely to cause confusion as to DDM's approval of Defendants' goods, services, or commercial activities.

45. Defendants' actions of false association, as described herein, have caused DDM injury in amount to be proven at trial.

46. Defendants have intentionally engaged in conduct they know will cause the aforementioned confusion, thereby justifying an award of exemplary and/or punitive damages.

## THIRD CLAIM FOR RELIEF
### Federal Dilution by Tarnishment – 15 U.S.C. § 1125(c)

47. DDM realleges and incorporates by reference all of the foregoing paragraphs.

48. The KSL name and mark – both in word form and stylized form – are famous and distinctive and are entitled to protection against dilution by blurring or tarnishment.

49. Defendants commenced use of the KSL name and mark in commerce after the KSL name and mark had become famous and distinctive.

50. By using the KSL name and mark in connection with online classifieds services in

which consumers are deceived as to the nature of the services provided and the origin of those services, Defendants have injured and will continue to injure DDM's business reputation, have tarnished the distinctive quality of DDM's famous KSL name and mark, and have lessened the capacity of DDM's famous KSL mark to identify and distinguish DDM's KSL Marketplace, in violation of 15 U.S.C. § 1125(c).

51. As a result of Defendants' tarnishment of DDM's KSL name and mark, DDM has suffered substantial damages, as well as the continuing loss of goodwill and reputation established in the KSL mark. This continuing loss of goodwill cannot be properly calculated, which constitutes irreparable harm and an injury for which DDM has not adequate remedy at law. DDM will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## FOURTH CLAIM FOR RELIEF
### Idaho Unfair Trade Methods and Practices – Idaho Code Ann. § 48-603

52. DDM reallages and incorporates by reference all of the foregoing paragraphs.

53. DDM and Defendants are competitors in the online classifieds services industry.

54. Defendants have attempted to pass off their similar classifieds services as those of DDM's KSL Marketplace by using the KSL name and mark on the KSL CAR CLASSIFIEDS (IDAHO ONLY) Facebook group page.

55. Defendants have knowingly made false representations as to the source, sponsorship, approval, and/or certification of their services by using the KSL name and mark belonging to DDM.

56. The foregoing misconduct of Defendants constitutes unfair methods and practices under one or more sub-sections of Idaho Code Annotated § 48-603.

57. DDM is entitled to recover damages to fairly and reasonably compensate it for Defendants' misconduct.

58. DDM is further entitled to prevent, restrain, and enjoin Defendants from current and future misrepresentations.

59. DDM has no adequate remedy at law, has suffered and is continuing to suffer irreparable harm as a result of Defendants' acts and is, therefore, entitled to preliminary and permanent injunctive relief to enjoin Defendants from further misconduct.

## FIFTH CLAIM FOR RELIEF
### Idaho Trademark Dilution – Idaho Code Ann. § 48-513

60. DDM realleges and incorporates by reference all of the foregoing paragraphs

61. The KSL name and mark – both in word form and stylized form – are famous and distinctive in Idaho and are entitled to protection against dilution.

62. Defendants commenced use of the KSL name and mark in commerce after the KSL name and mark had become famous and distinctive.

63. By using the KSL name and mark in connection with online classifieds services in which consumers are deceived as to the nature of the services provided and the origin of those services, Defendants have injured and will continue to injure DDM's business reputation, have tarnished the distinctive quality of DDM's famous KSL name and mark, and have lessened the capacity of DDM's famous KSL mark to identify and distinguish the KSL Marketplace, in violation of Idaho Code Annotated § 48-513.

64. In using DDM's KSL name and mark, Defendants willfully intended to trade on the reputation of DDM's KSL Marketplace.

65. As a result of Defendants' use of the KSL name and mark, DDM has suffered

substantial damages, as well as the continuing loss of goodwill and reputation established by DDM in the KSL mark. This continuing loss of goodwill cannot be properly calculated and this constitutes irreparable harm and an injury for which DDM has not adequate remedy at law. DDM will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## SIXTH CLAIM FOR RELIEF
### Idaho Common Law Trademark Infringement

66. DDM realleges and incorporates by reference all of the foregoing paragraphs.

67. Defendants have deliberately and willfully attempted to trade on DDM's long-standing and hard-earned goodwill in the KSL name, the KSL mark and the reputation of the KSL Marketplace in the online classifieds services industry. Moreover, Defendants' have deliberately and willfully attempted to confuse consumers as to the origin and sponsorship of Defendants' service and to pass their online services off as those of the KSL Marketplace.

68. Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive DDM of the ability to control the consumer perception of its online classifieds services offered under the KSL mark, placing the valuable reputation and goodwill of the KSL mark in the hands of Defendants.

69. Defendants' conduct is likely to cause confusion or mistake as to the affiliation, connection or association of Defendants' and their online classifieds services with DDM and its KSL Marketplace, and as to origin, sponsorship or approval of Defendants and their products and services in violation of Idaho common law.

70. As a result of Defendants' aforementioned conduct, DDM has suffered significant damages, as well as the continuing loss of the good will and reputation established by DDM in the KSL mark. This continuing loss of goodwill cannot be properly calculated and thus

constitutes irreparable harm and injury for which DDM has no adequate remedy at law. DDM will continue to suffer irreparable harm unless this Court enjoins Defendants conduct.

### SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment

71. DDM reallage and incorporate by reference all of the foregoing paragraphs.

72. Defendants have benefited from the improper, unfair, and unauthorized use of DDM's KSL mark, including the goodwill attendant thereto, as set forth above.

73. Defendants have full knowledge of and appreciation for the benefits they have received from DDM as a result of such improper conduct.

74. Defendants would be unjustly enriched if they were permitted to retain the proceeds obtain from their improper conduct.

75. Conversely, DDM has been harmed by Defendants' improper conduct.

76. Equity and good conscience require that Defendants be required to account for and pay to DDM an amount equal to the value of the benefit improperly obtained by Defendants.

### EIGHTH CLAIM FOR RELIEF
### Intentional Interference with Economic Relations

77. DDM reallage and incorporate by reference all of the foregoing paragraphs.

78. Defendants have intentionally interfered with DDM's existing and/or potential economic relations.

79. Defendants' intentional interference has been through the use of improper means, including, without limitation, deceit and misrepresentation regarding Defendants' products, infringement of DDM's KSL trademark rights, false advertising, and unfair trade methods and practices, as set forth herein.

80. Defendants' intentional interference has caused significant and irreparable financial, reputational, and other injury to Plaintiff in an amount to be proven at trial.

81. There is no legal justification for Defendants' intentional interference.

## **PRAYER FOR RELIEF**

WHEREFORE, DDM prays for judgment against Defendants and for a judgment:

A. Preliminarily and permanently enjoining Defendants, and all other persons or entities participating or acting in concert with them, from false advertising in any manner that creates confusion as to the association, origin, sponsorship, and/or approval between DDM or the KSL Marketplace and the Defendants;

B. Preliminarily and permanently enjoining Defendants, and all other persons or entities participating or acting in concert with them, from engaging in false association, including from creating the false impression as to source, origin, sponsorship, and/or approval between DDM and Defendants;

C. Awarding DDM its allowable costs and attorneys' fees.

D. Finding that Defendants have diluted DDM's KSL trademark;

E. Finding that Defendants have infringed DDM's KSL trademark;

F. Ordering Defendants and their agents, representatives, servants, and employees and any person in active concert or participation with them discontinue all use of the DDM's intellectual property, including the KSL name and mark;

G. Granting DDM pre-judgment and post-judgment interest on the damages caused to it by reason of Defendants' trademark infringement;

H. Preliminarily and permanently enjoining Defendants, and all other persons or entities

participating or acting in concert with them, from engaging in unfair trade methods and practices pursuant to Idaho Code Annotated § 48-603;

I. Ordering that Defendants be required to provide an accounting of all revenues and profits gained by them while engaged in the acts complained of herein;

J. Awarding DDM damages to which they are entitled based upon Defendants' unjust enrichment;

K. Declaring that Defendants have intentionally interfered with DDM's economic relations;

L. Awarding DDM damages in an amount to be determined at trial, but in no event less than the amount they have been improperly impacted by Defendants' intentional interference with Plaintiff's economic relations, including any and all available damages for such intentional interference, including financial, reputational, and other harm;

M. Awarding DDM its actual damages;

N. Awarding DDM its costs; and

O. Granted such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues in this action triable by jury.

82002.0002.10044420.1

DATED this 6th day of October, 2017.

        Respectfully Submitted,

        HAWLEY TROXELL ENNIS & HAWLEY LLP

        By /s/ David P. Gardner
           David P. Gardner
        *Counsel for Plaintiff Deseret Digital Media, Inc.*

82002.0002.10044420.1